UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT MITCHELL,

      Plaintiff,

v.                            CASE No. 8:15-CV-2603-T-23TGW

MARY CATHERINE HUNT,
*et al.*,

      Defendants.

_____

## REPORT AND RECOMMENDATION

THIS CAUSE came on to be heard upon the Plaintiff's Sealed Motion to Determine Existence of Conflict and Strike Barry A. Cohen's Notice of Appearance as counsel for the defendants (Doc. S-81), and the defendants' opposition thereto (Doc. S-95).[1]  The plaintiff argues that Cohen's representation of the defendants creates a conflict of interest because Cohen's law firm represented the plaintiff's business twelve years ago in a Federal Trade Commission investigation.

_____

[1]The page citations refer to the page numbers assigned by the CM/ECF system.

1

After consideration of the memoranda and oral argument on the motion, the plaintiff has failed to establish that Cohen's participation in this case violates a Florida Rule of Professional Conduct. He also does not show that Cohen's representation creates an appearance of impropriety or violates a duty of loyalty. I therefore recommend that Plaintiff's Sealed Motion to Determine Existence of Conflict and Strike Barry A. Cohen's Notice of Appearance (Doc. S-81) be denied as to Cohen's disqualification from this case.

I.

Plaintiff Scott Mitchell alleges that defendant Mary Hunt, his former fiancee, entered his home without permission and stole a "large quantity of gold, diamonds, and other precious gems, metals and jewelry" (Doc. 13, p. 1; Doc. 55-10, p. 7).[2] The plaintiff contends that Mary Hunt then shipped the jewelry, which the plaintiff values at over two million dollars, to the Virginia residence of Linda and Michael Hunt, who are her parents.

---

[2] The plaintiff's company, Smart Terms, Inc., is identified in the police report as the owner of the reported stolen property (Doc. 55-10, p. 7).

The plaintiff filed this lawsuit against the Hunts, asserting claims for replevin, conversion, civil conspiracy, civil theft, and a declaratory judgment to hold the property in a constructive trust (see Doc. 13). The plaintiff seeks damages against the defendants totaling $6,279,000.00 (the sum of which is treble damages under Florida's civil theft statute) (id., p. 10).

The defendants deny the plaintiff's allegations (see Docs. 16-18). They argue that the plaintiff is falsely accusing Mary Hunt of the theft in order to punish her for purportedly rejecting and embarrassing the plaintiff (Doc. S-95, p. 3 n.3). The defendants also attempt to portray the plaintiff as a psychopath, who is devoid of a conscience and moral compass, and who is "no stranger to employing threats, intimidation, false allegations, defamatory statements, and abusing process to destroy the lives of others" (see Doc. S-95, pp. 29-34, ¶20).[3]

Plaintiff's former lead counsel in this case was Todd Foster (Doc. S-81-5, ¶1). Foster; attorney Barry Cohen; and the law firm of Cohen, Jayson, & Foster LLP; represented the plaintiff in 2004, in connection with

---

[3]Cohen argues that these allegations were publicized in response to the "national news campaign that damaged the reputation of [his] clients"(Doc. S-95, p. 28, ¶19).

a Federal Trade Commission (FTC) investigation of the business practices of the plaintiff's company, Webcapades, Inc. (Doc. S-95, p. 25, ¶10; Doc. S-81-1, ¶2) ("administrative investigation"). The investigation involved Webcapades' compliance with anti-spamming law (i.e., sending unsolicited e-mail advertisements) (see Doc. S-123, pp. 10-12).[4] Ultimately, no charges were filed against Webcapades (Doc. S-81-1, ¶3). Foster was the lead attorney in the administrative investigation (Doc. S-81-5, ¶3). Foster states that he discussed the investigation with Cohen "as a matter of course throughout the duration of our representation" (id.).

Additionally, the plaintiff avers that he "met with both Mr. Foster and Mr. Cohen on multiple occasions during the [administrative] investigation..."(Doc. S-81-1, ¶2). He states that Cohen promised to remain involved in the matter "so as to convey his depth of feeling toward the representation" which, in turn, "provided additional comfort necessary for the plaintiff to speak freely with Mr. Cohen and Mr. Foster..." (id., ¶5). The

---

[4]Neither the plaintiff nor Foster stated in their declarations the nature of the business practices investigated by the FTC. The limited information the court has about the prior representation was obtained from a submission titled "Notes on FTC Follow-up Requests" (Doc. S-123, pp. 10-12). The notes primarily reference Webcapades' policies and procedures to prevent spam by it and Webcapades' affiliate companies.

plaintiff asserts that he provided to Cohen's law firm "many highly sensitive and private personal disclosures as well as reams of highly confidential personal and professional materials" (id., ¶3). He also states that his "attorneys ultimately developed successful factual and legal defenses on my behalf premised in substantial part on my credibility and honesty as a person and businessman" (id.).

Cohen, on the other hand, avers that, when Foster raised the issue of a conflict of interest to him, Cohen initially "did not remember the name of Scott Mitchell" (Doc. S-95, p. 23, ¶7). Further, Cohen states that "[t]he representation of Mr. Mitchell by Cohen, Jayson & Foster was conducted almost exclusively by ... Todd Foster ... [as] reflected by the time records... (id., p. 26, ¶11).[5] Cohen also specified, "I did not receive any information concerning Mr. Mitchell or his business entities during the FTC investigation..." or meet with any potential witnesses or employees of the business (id., pp. 26-27, ¶¶13, 14).

---

[5] It is believed that the paper file of the FTC case was destroyed in the normal course of business  (Doc. S-95, pp. 23-24, ¶8). However, the law firm retained Foster's time records, and the law firm's electronic management software system, "Perfect Law," maintained certain information about the representation, such as  meetings (id., ¶¶8, 9).

Additionally, with regard to the current litigation, Cohen averred (id.):

> [E]very allegation or statement contained within any of the filings made...in this case...relating to the alleged theft of personal jewelry from Scott Mitchell's home is derived from public information and from information independently provided by the Hunt family. Nothing filed by me or my firm in the present case has been prepared referencing or using any confidential information provided by Scott Mitchell during the course of the FTC investigation and, in fact, I am in possession of no such confidential information.

Cohen also stated that  (Doc. S-95, pp. 35-36, ¶22):

> Based on my experience as an attorney, I am very familiar with the rules of professional conduct and the ethical obligations of an attorney.  I am able to distinguish and identify confidential information when it is supplied by a client.  I have not and would not ever divulge a client confidence nor use any confidential information provided by a client to that client's disadvantage.

As indicated, the plaintiff has filed a Sealed Motion to Determine Existence of Conflict and Strike Barry A. Cohen's Notice of Appearance as counsel for the defendants (Doc. S-81).  The motion is opposed by the defendants (Doc 95).  The plaintiff, with leave of court, filed a reply

6

memorandum (Doc. S-123).  The parties also filed declarations and exhibits in support of their positions (Doc. S-81, Att. 1-5; Doc. S-95, pp. 21-162; Doc. S-123, pp. 8-12).   The matter was referred to me for a report and recommendation.  Oral argument was subsequently heard on the matter (see Doc. 146).

II.

"[T]here is a constitutionally based right to counsel of choice." In re BellSouth Corp., 334 F.3d 941, 955 (11th Cir. 2003).  Furthermore (id. at 961):

> Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist. Texas Catastrophe Property Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir.1992) (quoting McCuin, 714 F.2d at 1262)....The party moving to disqualify counsel bears the burden of proving the grounds for disqualification. Duncan v. Merrill Lynch, 646 F.2d 1020, 1028 (5th Cir. Unit B 1981); accord A.J. by L.B. v. Kierst, 56 F.3d 849, 859 (8th Cir.1995); see also American Airlines, 972 F.2d at 611 (holding that motions to disqualify are subject to exacting review because of potential for strategic abuse); Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2nd Cir. 1983) (characterizing movant's task in seeking removal of opposing counsel as a heavy burden).

In sum, "[d]isqualification of counsel is an extreme remedy that will not be imposed lightly." Duncan v. Merrill Lynch, Pierce, Fenner & Smith, 646 F.2d 1020, 1025 n.6 (5th Cir.1981).

On the other hand, [t]he right to counsel [of one's choice] does not...entail absolute freedom of choice....[Counsel] must not have a conflict of interest with another party. His employment must not entail disclosure of confidential information. The choice is never completely unfettered." McGuin v. Texas Power & Light Co., 714 F.2d 1255, 1262 (5th Cir. 1983).

Motions to disqualify are governed by two sources of authority: the local rules of the court in which they appear, and federal common law. Herrmann v. GutterGuard, Inc., 199 Fed. Appx. 745, 752 (11th Cir. 2006). In this district, counsel is governed by the Rules of Professional Conduct of the Rules Regulating the Florida Bar ("Florida Rules of Professional Conduct"). See Local Rule 2.04(d).[6]  Federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties. See Fed. Deposit Ins. Corp. v. U.S. Fire Ins.

---

[6]Local Rule 2.04(d) provides that "[t]he professional conduct of all members of the bar of this Court...shall be governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of The Florida Bar."

Co., 50 F.3d 1304, 1312 (5th Cir.1995). However, if a district court bases its disqualification order on an allegation of an ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys; instead, the Eleventh Circuit "insist[s] that district courts rest their disqualification decisions on the violation of specific Rules of Professional Conduct." Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir.1997).

In this case, the plaintiff argues that Cohen's representation of the defendants violates Rule 4-1.9(a) and (b) of the Florida Rules of Professional Conduct (Doc. S-81). The plaintiff also contends that Cohen's representation is "[i]mproper as a matter of policy" because it creates an appearance of impropriety, and violates Cohen's duty of loyalty to him (Doc. S-81, p. 18). The defendants respond that Cohen is not violating any Rule of Professional Conduct because Cohen's prior representation of the plaintiff was an unrelated administrative investigation of the plaintiff's company twelve years ago, and Cohen is not using any confidential information learned in that prior representation against the plaintiff.

III.

As indicated, the plaintiff argues that Cohen's representation of the defendants violates Rule 4-1.9 of the Florida Rules of Professional Conduct, which states:

> A lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

A.    There is a two-prong test for disqualification of counsel under Rule 4-1.9(a): first, the party seeking disqualification must show he had an attorney-client relationship with the opposing lawyer; and second, that the matters in the pending suit are "substantially related" to the matters or cause of action in which the attorney previously represented the movant. Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 728-29 (11th Cir. 1988). If the former client proves that the subject matters of the present and prior representations

are substantially related, the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation, and disqualify counsel. <u>Duncan</u> v. <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, <u>supra</u>, 646 F.2d at 1028.

It is undisputed that Cohen had a prior attorney-client relationship with the plaintiff, and that Cohen represents a party with interests adverse to the plaintiff. Therefore, the issue is whether the current representation is "substantially related" to the administrative investigation in which Cohen represented the plaintiff.

The Comment to Rule 4-1.9 explains that matters are:

> substantially related for the purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the prior client.

Matters are also substantially related if "the first matter could reasonably be understood as important to the issues involved in the present matter." <u>U.S. ex. rel. Bumbury</u> v. <u>Med-Care Diabetic & Medical Supplies, Inc.</u>, 101 F. Supp. 3d 1268,1275-76 (S.D. Fla. 2015). In this regard,

> the focus of the district court's inquiry should be
> on the precise nature of the relationship between
> the present and former representations....[W]hen
> dealing with ethical principles, we cannot paint
> with broad strokes. The lines are fine and must be
> so marked. The conclusion in a particular case can
> be reached only after painstaking analysis of the
> facts and precise application of precedent.

Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 646 F.2d at

1029 (quotations omitted). Therefore, the onus is on the movant to (id.):

> delineate[] with specificity the subject matters,
> issues, and causes of action presented in [the]
> former representation...[so] the district court [can]
> determine if the substantial relationship test has
> been met.   Merely pointing to a superficial
> resemblance between the present and prior
> representations will not substitute for the careful
> comparison demanded by our cases.

The plaintiff cannot meet his burden to show that the present

litigation and the administrative investigation are "substantially related"

because they are completely distinct matters. See Cox v. Am. Cast Iron Pipe

Co., supra, 847 F.2d at 728-29. The prior matter was an investigation by the

Federal Trade Commission, twelve years ago, regarding the business practices

of the plaintiff's company, Webcapades (Doc. S-81-1, ¶2).  It included an

investigation of Webcapades' compliance with anti-spamming laws (Doc. S-

123, pp. 10-12). In contrast, the plaintiff alleges in this litigation that his former fiancee stole from his home jewelry worth two million dollars, and that her parents were complicit in the theft (see Doc. 13). Thus, this litigation and the administrative investigation do not involve the same or similar events, transactions, subject matter, legal issues, or parties. See Comment to Rule 4-1.9 (matters are "substantially related" if they involve the same transaction or legal dispute).

For the same reasons, the investigation of Webcapades' business practices in 2004 is not reasonably understood as important to the plaintiff's allegations of civil theft against his former fiancee and her parents. See U.S. ex. rel. Bumbury v. Med-Care Diabetic & Medical Supplies, Inc., supra, 101 F. Supp. 3d at 1275-76. Rather, this litigation presents a "wholly distinct problem" from the administrative investigation. See Comment to Rule 4-1.9 (rule does not preclude a lawyer from representing a client in a position adverse to the former client when it involves a "wholly distinct problem").

The plaintiff argues that the matters are substantially related because the administrative investigation "involved the same core issues of credibility and character that materially overlap with this case" (Doc. S-81,

p. 12). However, the plaintiff presents no legal authority that a common issue of credibility, or character, is sufficient to show two matters are substantially related. To the contrary, the mere identification of a common subject matter is insufficient to show that the disputes are substantially related. See, e.g., Duncan v. Merrill Lynch, Pierce, Fenner & Smith, supra, 646 F.2d at 1025 (5th Cir.1981) (securities work); Moyroud v. Itek Corp., 528 F. Supp. 707, 708-09 (S.D. Fla. 1981) (photocomposing machine patents); Health Care & Retirement Corp. of America, Inc. v. Bradley, 961 So.2d 1071 (Fla. App. 2007) (negligence claim against a nursing home).

Additionally, as a matter of fact, the plaintiff has not identified any specific information which supports his contention that the credibility and character issues in the administrative investigation "materially overlap" with this case. The plaintiff merely asserts that he disclosed a vast amount of confidential information to the Cohen law firm, and that the prior administrative matter was successfully defended in "substantial part on [his] credibility and honesty as a person and businessman" (Doc. S-81-1, ¶3). However, such "generalities offer[] little assistance... [in] attempting to ferret out the degree of similarity, if any, between the former representation and the

pending case." Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 646 F.2d at 1029.   It seems unlikely that in defending his company in an administrative matter involving spam that the plaintiff would provide to his counsel adverse information that would be helpful in attacking his credibility or his character.   Under these circumstances, the plaintiff needed to be specific about the information that was disclosed.

As the Duncan court cautioned, when disqualification is sought, "we cannot paint with broad strokes. The lines are fine and must be so marked." Id.; see also Herrmann v. GutterGuard, Inc., supra, 199 Fed. Appx. at 752-53 (The moving party must demonstrate with particularity the common practices and procedures at issue.).

In Duncan, a Merrill Lynch customer brought a securities fraud action against the brokerage firm.   Merrill Lynch argued that the customer's attorney should be disqualified because his law firm had represented Merrill Lynch in ten prior securities matters. The Duncan court rejected the contention that the matters were substantially related.  It explained (646 F.2d at 1029):

> Merely stating that the previous representation involved securities work, conferences with Merrill Lynch employees, and the preparation of various legal documents provides the district court with no opportunity to engage in a painstaking analysis of the facts. The statements offered by Merrill Lynch, and accepted by the district court as evidence of a substantial relationship, could be applied to virtually any law firm that had ever represented Merrill Lynch or any large brokerage firm.

Similarly, in this matter, a common issue of honesty and credibility could be asserted in most cases, and the plaintiff does not, as required by Duncan, articulate the factual basis for finding that these distinct matters are substantially related. Furthermore, it is not apparent how the defense of the plaintiff's integrity as a businessman in the FTC's investigation of his company's business practices in 2004, has any bearing on the defense's portrayal of the plaintiff as a psychopath who lied about the jewelry theft in order to retaliate against his former fiancee for rejecting him. The passage of time between the two matters, alone, indicates that any credibility or character information from the administrative investigation would likely be stale and not meaningful.

Therefore, the plaintiff's argument that the matters share in common issues of credibility and character shows, at best, a "superficial resemblance," that clearly does not warrant the extreme remedy of disqualifying counsel.  See In re Bell South Corp., supra, 334 F.3d at 946 (counsel of choice is a right that may be overridden only if compelling reasons exist).

Additionally, the plaintiff contends that Cohen has violated Rule 4-1.9(a) of the Florida Rules of Professional Conduct because Cohen "intends to 'attack' work that he and Mr. Foster performed for Plaintiff previously" (Doc. S-81, p. 15).  See Comment to Rule 4-1.9(a) (matters are considered substantially similar when the current matter would involve the lawyer attacking work that the lawyer performed for the prior client).[7]

The plaintiff argues that Cohen's "references to 'character' defenses after receiving highly personal confidential disclosures during the prior matter" shows that Cohen will attack prior work from the administrative investigation (Doc. S-123, p. 3).  However, the plaintiff has not identified any

---

[7]Cohen acknowledges that any confidential information received by Foster in the administrative investigation is imputed to him (see Doc. 150, p. 46).

specific disclosure or work performed by Cohen's law firm in the administrative matter which shows that Cohen is attacking his prior work. Furthermore, Cohen argues that the plaintiff's "credibility, as it exists in 2016, includes a plethora of facts and circumstances that evolved and occurred after 2004 and the presence of these facts are the result of [the plaintiff's] subsequent acts, not an attack on lawyer 'work'" (Doc. S-95, p. 10). Cohen also specifies those facts and circumstances (see id., pp. 29-34, ¶20). Therefore, the plaintiff's conclusory contention that Cohen will attack his prior work in this litigation is unavailing.

In sum, the plaintiff has not met his burden to show that the present litigation and the prior administrative investigation are substantially related. See Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra. Therefore, the plaintiff has not established that Cohen violated Rule 4-1.9(a) of the Florida Rules of Professional Conduct.

B.     Next, the plaintiff argues that Cohen is violating Rule 4-1.9(b) of the Florida Rules of Professional Conduct, which precludes former counsel from:

> us[ing] information relating to the representation to
> the disadvantage of the former client except as
> these rules would permit or require with respect to
> a client or when the information has become
> generally known...

This rule requires the identification "of specific facts gained in a prior representation that are relevant to the matter in question." <u>See</u> Comment to Rule 4-1.9.

The plaintiff argues that information "conveyed [to Cohen's law firm] with an understanding of privilege and confidentiality" is now "being deployed against Plaintiff by his former trusted lawyer in a manner designed to discredit, undermine, and assassinate his character" (Doc. S-81, p. 3). Vague and conclusory allegations that Cohen is misusing confidential information are insufficient to show that Cohen has violated this rule and, concomitantly, to warrant Cohen's disqualification. <u>See</u> Comment to Rule 4-1.9.

Furthermore, the contention that Cohen acquired information from the administrative investigation that will be used to "discredit, undermine, and assassinate [the plaintiff's] character" is dubious because the plaintiff's honesty and credibility, if called into question at all, was a defense

in that matter (see Doc. S-81-1, ¶3). Thus, this circumstance indicates that

the plaintiff disclosed information that placed his character and credibility in

a favorable light, which obviously would not assist Cohen in this matter.

At the hearing, I pointedly asked plaintiff's counsel to specify

the confidential information that was disclosed to Cohen's law firm. The

following exchange occurred (Doc. 150, pp. 68-69):

> MR. FOSTER: [I] argued that there was
> confidential information....
> THE COURT: And what is that? What is that?
> MR. FOSTER: It's in the declaration.
> THE COURT: ....Give me a specific example.
> MR. FOSTER: It's the two witnesses that were
> identified... [Savar and Duncan]
> THE COURT: That he said I'm not calling?
> MR. FOSTER: Yes.

Plaintiff's counsel's argument is unavailing. Thus, the plaintiff's

declaration is comprised primarily of self-serving, general assertions

regarding disclosure of confidential information (see, e.g., Doc. S-81-1, ¶8

("Mr. Cohen has received confidential, privileged information he learned

from me personally and through materials I provided his firm...")).

The only specific information in the declaration is the

identification of two witnesses, Scott Duncan and Gene Savar (Doc. S-81-1,

pp. 2, 3 & n.2).  The plaintiff suspects that Duncan was behind the FTC's
investigation of his company because the plaintiff had previously sued
Duncan (id., p. 2).  The plaintiff gives no cogent explanation how Cohen will
use this information to the plaintiff's disadvantage in this litigation (see id.).
The plaintiff also speculates that Cohen listed Savar as a witness in this case
in order "to elaborate on confidential, privileged information [the plaintiff]
provided" (id., p. 2, ¶ 3).  However, he does not specify any such information
that will be used to his disadvantage, and the nature of the former
representation does not indicate that there is any relevant information.
Furthermore, Cohen states that his knowledge of these individuals was
obtained from public records available to any lawyer (Doc. S-95, p. 3 n.2; id.
pp. 27, ¶15).  Therefore, the plaintiff's conclusory assertion that Cohen will
use confidential information learned about Duncan and Savar in the prior
representation to the plaintiff's disadvantage in this litigation is unavailing.

    In all events, this claim is moot because Cohen has withdrawn
Duncan and Savar from the defendants' witness list, and Cohen states that he
has not contacted nor spoken to Duncan or Savar (Doc. S-95, p. 3 n.2).
Therefore, there is no basis for concluding that Cohen will be "us[ing]

information [learned regarding Savar or Duncan in the prior matter] ... to the disadvantage of the plaintiff." See Rule 4-1.9(b).

Furthermore, the plaintiff argues that Cohen "plans to depose key players from his prior representation of Plaintiff, several of whom have little or nothing to do with the facts of this case," which "illuminates [Cohen's] determination to utilize to his former client's disadvantage information previously disclosed confidentially to him or the prior law firm by Plaintiff" (Doc. S-81, pp. 15-16). This argument is meritless because the plaintiff does not identify any information that he told the Cohen law firm regarding these individuals that would disadvantage his case.

Rather, the plaintiff argues that it can be inferred that Cohen intends to use information from the prior representation against him because several of these witnesses "have little or nothing to do with the facts of this case." The plaintiff's opinion that several of these witnesses "have little or nothing to do with the facts of this case" does not satisfy the plaintiff's obligation to identify specific facts obtained from the prior representation that will be used against him. See Comment to Rule 4-1.9.

Furthermore, the contention is disingenuous, as several of the witnesses identified by the plaintiff clearly have relevant information about this case. For example, Nicholas Taldone and John Fontana were identified in the police report as part-owners of the jewels that were reported stolen, and Kristi Mitchell was reportedly speaking on the telephone with the plaintiff when the alleged theft was discovered (see Doc. 55-10, p. 2; Doc. 150, p. 53).[8]

Plaintiff's counsel also argued that Cohen's cross-examination of the plaintiff is analogous to a criminal attorney cross-examining a former client (see Doc. 150, pp. 21-23, 36). This contention is baseless. In the criminal realm, that issue typically arises when an attorney has a former client that will testify against a current client. In that circumstance, the lawyer must either seek to elicit confidential information from the former client, or refrain from vigorous cross examination. See U.S. v. Culp, 934 F. Supp. 394, 398 (M.D. Fla. 1996). That issue is not presented here. Further, the plaintiff has

---

[8]At the hearing, plaintiff's counsel expressed concern about Cohen's conduct during discovery. I reminded counsel that I preside over discovery, and that counsel (for either party) is subject to sanctions for improper conduct (see Doc. 150, pp. 8-10, 36).

not even identified the confidential information acquired from the prior representation that Cohen would use against him during cross-examination.

The plaintiff argues that, "[m]ost concerning[]" is Cohen's assertions that the plaintiff "is no stranger to employing threats, intimidation, false allegations, defamatory statements, and abusing process to destroy the lives of others," and that "all of the plaintiff's vindictive, abhorrent, psychopathic behavior is going to come out" (Doc. S-81, pp. 5-6). The plaintiff argues that these assertions show that Cohen is intending to use confidential information from the administrative investigation against him in this case.

However, once again, the plaintiff has not identified any specific information from the prior representation that would support Cohen's vitriolic arguments. Further, the plaintiff's bare contention that information he disclosed in connection with an administrative investigation twelve years ago will be used against him in this litigation to undermine his character and credibility is not sufficient to justify disqualification. See Official Comments to Rule 4-1.9 ("Information acquired in a prior representation may have been rendered obsolete by the passage of time.").

Moreover, Cohen avers that the facts and circumstances underlying his negative character portrayal of the plaintiff were obtained independently from the defendants, and other generally known sources (Doc. S-95, pp. 29-34, ¶20).   There is no violation of Rule 4-1.9(b) in that circumstance.  See Rule 4-1.9 (no violation of this rule if the information to be used to the former client's disadvantage "has become generally known," and defining "generally known" as information that typically would be obtained by a reasonably prudent lawyer).  Cohen has also identified his independent sources for that information (see Doc. S-95, pp. 29-34, ¶20), which strongly supports Cohen's averment that his allegations against the plaintiff have nothing to do with any information disclosed during the administrative investigation.

In sum, twelve years have passed since the administrative investigation, and the plaintiff has not identified any information disclosed during the prior matter that Cohen will use to the plaintiff's disadvantage in this litigation.  Therefore, the plaintiff has not met his burden to establish a violation of Rule 4-1.9(b).

C.    Appearance of impropriety

The plaintiff also argues that Cohen's "pernicious and personal assaults on Plaintiff's credibility, character, and mental wellbeing" create "an impermissible appearance of professional impropriety in violation of the policy considerations behind Rule 4-1.9" (Doc. S-81, p. 2). The defendants respond that their counsel may not be disqualified based on "policy considerations"; rather, "courts [must] rest their disqualification decisions on the violation of specific Rules of Professional Conduct." Schlumberger Techs., Inc. v. Wiley, supra, 113 F.3d at 1561.

The defendants are correct. Thus, the Eleventh Circuit held that counsel's disqualification on ethical grounds must be based upon the violation of a specific Rule of Professional Conduct because attorney disqualification should not be subject to the whims of the court, or based upon "some transcendental code of conduct that exist[s] only in the subjective opinion of the court." Id.; see also Herrmann v. Gutter Guard, supra, 199 Fed. Appx. at 752 (the court may not simply rely on a general inherent power to admit and suspend attorneys).

Consequently, the Eleventh Circuit, in applying Georgia law, rejected an "appearance of impropriety" as a ground for disqualifying counsel. Waters v. Kemp, 845 F.2d 260, 265 (11th Cir. 1988); Herrmann v. GutterGuard, Inc., supra, 199 Fed. Appx. at 755. The Eleventh Circuit elaborated that, when the Model Code of Professional Conduct ("Model Code") governed, it expressly prohibited an appearance of impropriety. However, the Model Code was replaced by the Model Rules of Professional Conduct, which omitted the "appearance of impropriety" standard. Accordingly, the Eleventh Circuit held in Kemp that an appearance of impropriety is no longer an independent basis for counsel's disqualification. 845 F.2d at 265.

The defendants argue that the reasoning in Kemp applies here because the Florida Bar also replaced the Model Code with the Model Rules of Professional Conduct (see Doc. S-95, pp. 15-16). See Armor Screen Corp. v. Storm Catcher, Inc., 709 F. Supp. 2d 1309, 1320 (S.D. Fla. 2010) (an appearance of impropriety is not an independent ground for disqualification); Morgan Stanley & Co. v. Solomon, No. 08-81330-CIV, 2009 WL 413519 at *6 (S.D. Fla. Feb. 19, 2009) ("Simply put, based on the Court's finding that

Mr. Solomon has not violated either subsection of Rule 4.1-9 there is no basis to find the appearance of impropriety.").

The plaintiff, however, disputes that <u>Kemp</u> is applicable. Although plaintiff's counsel initially agreed at the hearing that there must be a violation of a rule of professional conduct in order to disqualify counsel, he changed his position, arguing that there are a couple of cases leaving this issue "open" (Doc. 150, pp. 25-27, 31-32; <u>see</u> Doc. S-81, p. 19 n.12).

The plaintiff relies upon the holdings of some district and Florida courts that Florida retains the "appearance of impropriety" standard, notwithstanding its omission from the Florida Rules of Professional Conduct. <u>See, e.g., Brotherhood Mutual Ins. Co.</u> v. <u>National Presto Industries, Inc.</u>, 846 F. Supp. 57, 58 (M. D. Fla. 1994). These holdings are based upon the Florida Supreme Court's comment in <u>State Farm Mut. Auto. Ins. Co.</u> v. <u>K.A.W.</u>, 575 So. 2d 630, 634 (Fla. 1991) that, "we do not believe that a different standard now applies because the specific admonition to avoid the appearance of impropriety does not appear in the Rules of Professional Conduct."

This reasoning is unpersuasive because the Eleventh Circuit's holding that "courts [must] rest their disqualification decisions on the

violation of specific Rules of Professional Conduct," <u>Schlumberger Techs., Inc.</u> v. <u>Wiley</u>, <u>supra</u>, 113 F.3d at 1561, is controlling on this court.  Since there is no rule precluding an appearance of impropriety, it cannot be the basis for counsel's disqualification.

Furthermore, the <u>K.A.W.</u> decision does not hold that an appearance of impropriety is a ground for disqualification.  As cogently discussed in <u>Armor Screen Corp.</u> v. <u>Storm Catcher, Inc.</u>, <u>supra</u>, 709 F. Supp. 2d at 1320, an appearance of impropriety was not at issue in <u>K.A.W.</u>.  Rather, <u>K.A.W.</u> examined the standard governing a conflict of interest under Rule 4-1.9, after the Model Code was replaced by the Model Rules of Professional Conduct.

Thus, the Florida Supreme Court's statement in <u>K.A.W.</u> that, "we do not believe that a different standard now applies," does not refer to the retention of the appearance of impropriety standard; it refers to the continued application of the test for determining a conflict of interest, notwithstanding the replacement of the Model Code.

Therefore, the Eleventh Circuit's holding in <u>Kemp</u>, and its progeny, is equally applicable here.  Accordingly, an "appearance of

29

impropriety" is not, as argued by the plaintiff, an independent basis for disqualification.

Moreover, <u>assuming arguendo</u> that it is an independent ground for disqualifying counsel, the plaintiff has not shown that Cohen's representation of the defendants creates an appearance of impropriety.[9] The two-part test to determine whether there is an appearance of impropriety requires:

> First...there must exist at least a reasonable possibility that some specifically identifiable impropriety did occur. Second, the likelihood of public suspicion or obloquy must outweigh the social interests that will be served by the attorney's continued participation in the case.

<u>Norton</u> v. <u>Tallahassee Mem. Hosp.</u>, 689 F.2d 938, 941 (11th Cir. 1982). The plaintiff has not shown "a reasonable possibility that some specifically identifiable impropriety did occur." As discussed, the plaintiff's argument consists of generalities and speculation, and the plaintiff's "bare assertion that

---

[9]The plaintiff also argues that disqualification is warranted in this case because an appearance of impropriety is accompanied by Cohen's alleged impermissible use of confidential information and the violation of his duty of loyalty to the plaintiff (Doc. 150, pp. 26, 32). This contention is meritless. As discussed <u>infra</u>, the plaintiff has not established that Cohen's representation of the defendants creates an appearance of impropriety. Furthermore, the plaintiff has not shown that Cohen is improperly using confidential information (<u>supra</u>, pp. 18-25), and a violation of a duty of loyalty is not a cognizable basis for disqualifying counsel (<u>see infra</u>, pp. 34-36).

[the defendants] ha[ve] a tactical advantage in the litigation...based on the knowledge gained in the prior suit is unconvincing to support Plaintiff's argument that there is an appearance of impropriety." First Impressions Design & Mgmt., Inc. v. All That Style Interiors, Inc., 122 F. Supp. 2d 1352, 1354 (S.D. Fla. 2000).

The plaintiff has also failed to show that the likelihood of public suspicion or obloquy outweighs the social interests that will be served by a party having the lawyer of her choosing. Norton v. Tallahassee Mem. Hosp., supra, 689 F.2d at 941. Thus, the likelihood is low, or non-existent, that the public would view with suspicion Cohen taking an adverse position to the plaintiff when the prior representation was a dozen years ago, concerning an unrelated matter, in which Cohen had a very limited role.

Rather, the crux of the plaintiff's argument is that "[h]e's upset that he's been called these names by his former attorney" (Doc. 150, p. 34). The plaintiff points out that Cohen's filings characterize the plaintiff as a "psychopath" who is "devoid of a conscience and moral compass," and "is 'no stranger to employing threats, intimidation, false allegations, defamatory statements, and abusing process to destroy the lives of others...." (see Doc. S-

95, pp. 29-34, ¶20). Cohen also argues that, "all of Plaintiff's 'vindictive, abhorrent, psychopathic behavior is going to come out'" (see Doc. S-81, p. 6). At the hearing, plaintiff's counsel argued, emphatically, that it creates an appearance of impropriety for an attorney who once represented you to "turn around these years later and ... say[] awful, awful things about you. There is something wrong about that. Shouldn't go on" (Doc. 150, p. 29).

Regardless of how distasteful the plaintiff (and the court) finds the defendants' inflammatory rhetoric, this offensive strategy does not equate with raising the public's suspicion because the connection between Cohen and the plaintiff is so attenuated. See Schlumberger Techs., Inc. v. Wiley, supra, 113 F.3d at 1561 n.8 ("it is not up to ... [the court] to impose our own views of what tactics are or are not acceptable through disqualification of counsel").

On the other hand, disqualifying Cohen from this case would have a disparately negative impact on the defendants' right to counsel of their choice. Thus, Cohen is an experienced defense attorney who is highly regarded for his legal acumen. That caliber of counsel is necessary here,

where the plaintiff has brought suit against the defendants for over six million dollars in damages.

Further, as lead counsel in this case, Cohen has "reviewed hundreds of documents, consisting of thousands of pages, interviewed ... clients, interviewed other witnesses, consulted with experts and conducted a substantial factual investigation that relate[s] to this case" (Doc. 138-6, ¶7). Moreover, he "was able to prevent [the defendants] from being federally indicted," and he has attempted to protect the defendants in the court of public opinion in response to unflattering portrayals of defendant Mary Hunt (Doc. S-95, pp. 28-29, ¶19). Thus, disqualification would clearly impose a substantial hardship on the defendants, who have a highly experienced attorney in whom they have a high level of confidence. See Norton v. Tallahassee Mem'l Hosp., supra, 689 F.2d at 941 n.4 ("disqualification is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly.").

Rather, if any suspicion is raised, it is that this motion is motivated by tactical reasons because there is a glaring disconnect between these cases. See In re Bell South Corp., supra, 334 F.3d at 961 (quoting In re:

American Airlines, 972 F.2d 605, 611 (5th Cir. 1992)) (motions to disqualify

are subject to exacting review because of potential for strategic abuse); Coral

Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London,

911 So. 2d 155, 157 (Fla. App. 2005) (noting that motions for disqualification

may be brought for tactical purposes).

D.    Duty of loyalty

The plaintiff's final contention is that Cohen should be

disqualified because he "violated his enduring duty of loyalty" to the plaintiff

by attacking the plaintiff's character and "his unfair and aggressive use of

information obtained confidentially during his prior representation of

Plaintiff" (Doc. S-81, p. 20 n.13).

As the plaintiff acknowledges, the duty of loyalty is not based

upon the violation of a specific rule of professional conduct (see Doc. S-81,

pp. 4, 18, 20). Instead, the plaintiff relies upon case law purportedly holding

that the violation of a "duty of loyalty" is an independent basis for counsel's

disqualification (id., pp. 9, 20; Doc. 150, p. 28, citing In re Skyway

Commc'ns Holding Corp., 415 B.R. 859, 868 (Bankr. M.D. Fla. 2009)). This

argument fails as a matter of law because, as indicated,  disqualification

decisions must rest on the violation of a specific Rule of Professional Conduct. Schlumberger Techs., Inc. v. Wiley, supra, 113 F.3d at 1561.

Furthermore, the plaintiff was not able to specify the standard for determining a violation of a duty of loyalty. Rather, at the hearing, plaintiff's counsel argued that the court should look at the amalgamation of circumstances to determine a violation (see Doc. 150, pp. 28-29). However, attorney disqualification may not be based upon some "transcendental code of conduct that exists only in the subjective opinion of the court." Id.; see also In re Servico, Inc., 149 B.R. 1009, 1013 (Bankr. S.D. Fla. 1993) ("such a vague duty of loyalty would render meaningless the specific language set forth in Rule 4-1.9(a)").

Additionally, the Eleventh Circuit has stated, "Whatever we may personally think of 'hard ball' litigation tactics ... it is not up to us or the district court to impose our own views of what tactics are or are not acceptable through ... disqualification" of counsel. Schlumberger Techs., Inc. v. Wiley, supra, 113 F.3d at 1561 n.8. Therefore, the plaintiff has not shown that the defendants' strategy to portray the plaintiff in a negative manner is a violation of a duty of loyalty.

Finally, the Skyway case does not, as the plaintiff argues, state that a violation of the duty of loyalty is an independent basis for disqualification of counsel. In Skyway, the court determined that a waiver of an attorney-client privilege does not also waive an attorney's conflict of interest. It reasoned:

> Generally an attorney's duty of loyalty to a former client may be broader than the attorney-client privilege, so that the attorney may not oppose his former client on a related matter, even if he uses only information that comes from a source other than his former client.

415 B.R. at 868. The "duty of loyalty" referenced in this passage is merely a reiteration of Rule 4-1.9(a). Compare id. with Rule 4-1.9(a) (attorney may not oppose his former client on a substantially related matter). Thus, "duty of loyalty" is merely another way of referring to Rule 4-1.9(a), as distinguished from the "attorney-client privilege."

In sum, a violation of a duty of loyalty is not a cognizable basis for counsel's disqualification because it is not a violation of a Rule of Professional Conduct. Moreover, there is no clear standard to determine a violation of such a duty.

IV.

For these reasons, I recommend that Plaintiff's Motion   to Determine Existence of Conflict and Strike Barry A. Cohen's Notice of Appearance as counsel for the defendants (Doc. S-81) be denied as to Cohen's disqualification as counsel for the defendants.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JANUARY  9  , 2017

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

37